Harold H. GORDON and the Estate of Louis P. Begin, Plaintiffs-Appellants,

v.

CITY OF WARREN, City of Warren Planning and Urban Renewal Commission, Jerome R. Schmeiser, Individually and his official capacity, R. Scrivo, George A. Petrie, James E. Decker, Charles R. Tefft, A. Thomas Winterfield, Kenneth MacKenzie, John M. Frolling and Francisco Torre, Individually and jointly, Defendants-Appellees.

No. 76–2204.

United States Court of Appeals, Sixth Circuit.

Argued April 11, 1978.

Decided June 26, 1978.

Dykema, Gossett, Spencer, Goodnow & Trigg, Fred J. Fechheimer, Detroit, Mich., Timothy A. Fusco, Troy, Mich., for plaintiffs-appellants.

W. Thomas Marrocco, Jr., and John J. Murray, Warren, Mich., Robert J. Lord, Fair Haven, Mich., for defendants-appellees.

Before WEICK, EDWARDS and LIVE-LY, Circuit Judges.

LIVELY, Circuit Judge.

The plaintiffs appeal from summary judgment for the defendants in an action for damages. The questions for decision are whether the complaint as amended stated a federal cause of action and, if so, whether the action was barred by the applicable statute of limitations. We reverse and remand for further proceedings.

The plaintiffs sought to build an apartment complex on real estate which they own in Warren, Michigan. An ordinance of the city, by reference to a "master thoroughfare plan," in effect prohibited the erection of any building within 200 feet of a proposed right-of-way. The right-of-way was part of a scheduled widening of one of the streets on which plaintiffs' property abutted. The widening was to occur at some unspecified future date. By mutual mistake of the parties the location of the line from which the setback was measured was misplaced on a revised site plan. The inaccurate plan was used as the basis of a building permit issued by the defendant planning commission to the plaintiffs.[1]

After the mistake was discovered in September 1969 the commission issued a stop order and directed that four partially completed apartment buildings within the 200-foot setback area be dismantled. When the plaintiffs refused to dismantle the buildings the city sought an injunction. On October 24, 1969 the state trial court entered judgment for the city and directed that two of the buildings be removed. Gordon and Begin appealed this decision. On January 12, 1971 the Michigan Court of Appeals reversed, holding that local units of government in Michigan may not "use the police power to require the reservation of property that a public authority might some day wish to condemn." *Gordon v. Warren Planning Commission,* 29 Mich.App. 309, 327, 185 N.W.2d 61, 69 (1971). The court found that the effect of the challenged ordinance was

to require a dedication of private property to public use without any provision for compensation. *Id.* at 329, 185 N.W.2d 61.

The planning commission then appealed to the Michigan Supreme Court which affirmed the Court of Appeals in a decision filed on July 26, 1972. In its opinion the court found that the ordinance was unconstitutional on its face as a violation of due process of law, stating:

We agree with the Court of Appeals that this ordinance contains none of the safeguards which could sustain its constitutionality. The city's master thoroughfare plan was adopted without notice to plaintiffs. The ordinance contains no time limit for resolution of the question of whether the land will ever be condemned. The ordinance, in effect, requires the dedication by plaintiffs of a large portion of their property for public purposes without any provision for compensation, and, if a condemnation authority does eventually condemn the land, it could very well be considerably depreciated from its present worth. For each of these reasons, we hold the zoning ordinance unconstitutional.

*Gordon v. Warren Planning Commission,* 388 Mich. 82, 92, 199 N.W.2d 465, 470 (1972).

The complaint in the present action was filed in the district court on October 2, 1974. Jurisdiction was asserted pursuant to 28 U.S.C. § 1331 and § 1343, and it was stated that more than $10,000 is in issue. Recovery of damages was sought on four different theories, set forth in separate counts. The fourth count was dropped, however, when an amended complaint was filed on September 5, 1975. Count I as amended sought damages from the city and the commission under the 14th Amendment for the "continuous and uninterrupted taking of property without due process of law and without just compensation during the period from July 14, 1968 through August 16, 1972, a period in excess of four years." The damages were claimed to consist of in-

---

1. Louis P. Begin, one of the owners at the time of original submission of the request for a building permit, has since died. We refer to his estate as one of the plaintiffs.

creased cost of completion of the buildings, vandalism and weather damages while construction was halted and lost rentals less additional expenses that would have been incurred. The prayer was for $260,500 plus interest, costs and reasonable attorney fees.

In Counts II and III the same damages were sought for "deliberate and malicious" violations of 42 U.S.C. § 1983 and § 1985 respectively by the individual defendants. It was charged that these defendants, acting under color of state law, deprived the plaintiffs of rights secured to them by the Constitution by taking their property for more than four years without due process of law and without just compensation.

In their answer to the original complaint the defendants pled that Count I failed to state a cause of action because the district court had no jurisdiction to award compensation damages in an action based directly on an alleged violation of the 14th Amendment. They answered Counts II and III with contentions that neither stated a claim upon which relief could be granted and that both were barred by the applicable Michigan statute of limitations, M.C.L.A. 600.-5805(7), which prescribes a three-year limitation for "all other actions to recover damages for injuries to persons and property." The answer admitted that a stop work order was issued to the plaintiffs in September 1969 and that the civil action for an injunction was thereafter commenced by the planning commission.

In a separate motion to dismiss Counts II and III the defendants contended that the right of action asserted in those counts accrued when the stop work order was issued in September 1969 and that the limitations period ran before the complaint was filed. The plaintiffs made a three-fold response to this motion: (1) that the taking of their property was continuous and the statute of limitations did not begin to run until the restraint on use of their property was removed, (2) that all statutes of limitations are tolled during litigation and (3) that in any event a Michigan six-year statute of limitations, M.C.L.A. 600.5813, was applicable to their cause of action.

In their answer to the amended complaint the defendants denied taking the plaintiffs' property for public use and denied ever applying the disputed ordinance to plaintiffs or their property. This pleading also relied on qualified immunity of the individual defendants, stating that they acted in their official capacities, in good faith and without ill-will or malice. In a motion to dismiss the amended complaint the defendants argued that if plaintiffs had a cause of action it accrued on January 12, 1971, the date of the decision of the Michigan Court of Appeals. Asserting that the planning commission did not seek to obtain a stay of that decision while appealing to the Michigan Supreme Court the defendants contended that after January 12, 1971 the plaintiffs were "totally unprohibited" by any action of the defendants from resuming and completing construction of the apartment project.

The last contention evoked an affidavit by the plaintiff Gordon that the stop order was not lifted after the court of appeals decision was rendered and that plaintiffs could not resume construction until the Michigan Supreme Court finally determined that the ordinance was unconstitutional. Counter affidavits were filed which sought to establish that the stop order was not related to the 200-foot setback requirement. The affidavits asserted that the order was based on the fact that work on the project was not in accordance with the revised plan which the commission had approved, in particular, the requirement that a six-foot-high brick wall be erected along the plaintiffs' north property line.

The district court held that the three-year statute of limitations applied to all three counts and granted summary judgment for the defendants. *Gordon v. City of Warren,* 415 F.Supp. 556 (E.D.Mich.1976). The court held that a Michigan "tolling" statute was not applicable and that accrual of plaintiffs' cause of action was not deferred by the city's appeal to the Michigan Supreme Court, stating:

It is the opinion of this Court, however, that the possibility of reversal by the

state supreme court is not a restraint by the defendants sufficient to be a "continuing wrong." When the Court of Appeals reversed the trial court, all restraint [sic] to the construction project based on the invalid ordinance were lifted, including the requirements specified by that ordinance and the Circuit Court injunction. It was not necessary for the city to remove the offending ordinance from its books for its effect to be negated. 415 F.Supp. at 563 (footnotes omitted).

The court further held that failure of the city to lift the stop order after the decision of the court of appeals did not constitute a "continuing wrong." This holding was predicated on a finding that the stop order was issued because the plaintiffs had failed to comply with valid conditions upon which their site plan had been approved and not solely for violation of the 200-foot setback requirement. 415 F.Supp. at 564.

The district court then found that the complaint as amended failed to state a claim for relief in any of its counts. As to the city and the planning commission the court held that there was no cause of action under the 14th Amendment due process claim of the plaintiffs. As to the individual defendants the court determined that even though relief was sought pursuant to 42 U.S.C. §§ 1983 and 1985, no claim was stated since the underlying constitutional ground was the same for all claims—the taking of private property for public use without just compensation. In holding that there had been failure to state a cause of action the district court relied on the en banc decision of the Court of Appeals for the Second Circuit in *Brault v. Town of Milton*, 527 F.2d 730, 736 *et seq.* (1975). 415 F.Supp. 564–66.

We deal first with the dismissal for failure to state a claim for relief. Included in the 5th Amendment is the provision that no person shall ". . . be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." In

*Barron v. Baltimore*, 32 U.S. (7 Peters) 243, 247, 8 L.Ed. 672 (1833), Chief Justice John Marshall wrote for the Supreme Court that the language of the 5th Amendment which prohibits the taking of private property for public use without just compensation "must be understood as restraining the power of the general government, not as applicable to the States." It was concluded on this basis that the Court had no jurisdiction over an appeal from a decision of a Maryland Court of Appeals reversing an award of damages for injuries to a wharf caused by actions of the City of Baltimore.

After adoption of the 14th Amendment a case was appealed to the Supreme Court of the United States from the Supreme Court of Louisiana in which it was claimed that taxing actions of the City of New Orleans had resulted in the taking of property without due process of law. In *Davidson v. New Orleans*, 96 U.S. 97, 24 L.Ed. 616 (1878), the Supreme Court again held that it had no jurisdiction over such a case. The majority concluded that the Constitution imposed no requirement that the states pay compensation, noting—

> If private property be taken for public uses without just compensation, it must be remembered that, when the XIVth Amendment was adopted, the provision on that subject, in immediate juxtaposition in the Vth Amendment, with the one we are construing, was left out, and this was taken.

Justice Bradley concurred in the result, but concluded it would violate due process for a state to authorize the taking of private property without compensation.

The concurring opinion of Mr. Justice Bradley was adopted by the Court in *Chicago, Burlington & Quincy R. Co. v. Chicago*, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). The Supreme Court held that it did have jurisdiction. The majority opinion, written by Justice John Marshall Harlan, held that the just compensation requirement of the 5th Amendment is included in

the due process clause of the 14th.[2] Quoting from Chancellor Kent in *Gardner v. Newburgh,* 7 Am.Dec. 526, Justice Harlan wrote that it is "a principle of natural equity . . . that fair compensation be paid to the owner of private property taken for public use." *Id.* at 238, 17 S.Ct. at 585. It was argued in the *Burlington* case that the property owner had been given notice and that all procedural requirements had been met in the action in which its property was taken and that this satisfied due process. The Court did not accept this argument, holding instead that the fact that property is taken in judicial proceedings regular in form does not satisfy due process requirements if no adequate provision is made for payment of just compensation.

■ The *Burlington* case reached the Supreme Court by appeal from the Supreme Court of Illinois and settled a jurisdictional issue. The question in the present case is not whether the district court had jurisdiction. It clearly did have jurisdiction since the complaint presented a substantial question under the Constitution and alleged the existence of the required amount in controversy. *Mosher v. Phoenix,* 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148 (1962). Jurisdiction is established even if the complaint fails to state a cause of action upon which relief may be granted. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). The more difficult question is whether the complaint in the present case does state a cause of action, *i. e.,* whether the due process rights enunciated in *Burlington* may be enforced against a city in an action commenced in a United States district court.

Since the Supreme Court held in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960), that a municipal corporation is not a suable "person" under 42 U.S.C. § 1983, there has been a split among the lower federal courts on the question of whether a municipal corporation may be sued directly under the 14th Amendment for violation of constitutional rights. See *e.*

g., *Gagliardi v. Flint,* 564 F.2d 112 (3d Cir. 1977), *petition for cert. pending; Brault v. Town of Milton, supra; Hostrop v. Board of Junior College Dist. No. 515,* 523 F.2d 569 (7th Cir. 1975), *cert. denied,* 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208 (1976). In *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court again left open the question of whether a cause of action should be implied directly from the 14th Amendment.

In the absence of a ruling by the Supreme Court, this court has consistently upheld claims of a direct right of action against municipal corporations. The court affirmed a judgment for damages against the city in *Foster v. City of Detroit,* 405 F.2d 138 (6th Cir. 1968), where the claim was for diminution in the value of real estate during the pendency of condemnation proceedings which were discontinued after they had been pending for ten years. As in the present case, the action was begun in a federal court after judicial proceedings in the state courts had concluded and no compensation had been paid the property owners. In *Hanna v. Drobnick,* 514 F.2d 393, 398 (6th Cir. 1975), this court concluded that the *Bivens* case (*Bivens v. Six Unknown Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)) created a cause of action in the district court for damages against a city directly under the 14th Amendment when the jurisdictional amount required in 28 U.S.C. § 1331 was satisfied. See also *Wiley v. Memphis Police Department,* 548 F.2d 1247, 1254 (6th Cir. 1977), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977); *Amen v. City of Dearborn,* 532 F.2d 554, 559 (6th Cir. 1977).

The en banc decision in *Brault v. Town of Milton,* 527 F.2d 730, 736 (2d Cir. 1975), relied upon by the district court, was not based on a finding that no cause of action existed. The court wrote, "Assuming that a suit for damages can be founded directly

---

**2.** Some commentators conclude that the Court found an independent due process requirement that compensation be paid, rather than a literal incorporation of the compensation clause into

the 14th Amendment. See Nowak, Rotunda and Young, *Constitutional Law* at 440 (West Publishing Co. 1978).

on the Fourteenth Amendment, *a question we do not here decide,"* the complaint failed to "demonstrate any basis for a claim that their [plaintiffs'] rights under the Amendment have been violated." *Id.* at 738 (emphasis added). The court concluded that no constitutional violation had been demonstrated because there was no allegation of malice on the part of the defendant and that use of the judicial process may not be the basis of a claim that due process has been denied. In dissent Judge Oakes concluded that the effect of the majority opinion was to deny the existence of a direct cause of action under the 14th Amendment and an adjudication that no remedy exists for one "deprived of property by the incorrect application of state judicial authority." *Id.* at 741.

■ The reasons for holding that a municipal corporation may not be sued under 42 U.S.C. § 1983 do not seem to apply to a direct action based on a claim that private property has been taken for public use without compensation. Unlike § 1983, the 14th Amendment does not refer to "person[s]." Moreover, § 1983 was enacted to "create [ ] a species of tort liability" in favor of persons deprived of constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). The government has the right to take private property for public uses as an attribute of sovereignty. However, under our constitution it is a condition of the exercise of this authority that just compensation be paid. When a government takes private property without payment of just compensation it does not commit a mere trespass, the typical property tort. Rather, it abuses one of its sovereign powers and even though the requirements of procedural due process may be scrupulously observed, there has been a deprivation of due process in the sense of fundamental fairness or "natural equity." *Chicago, Burlington & Quincy R. Co. v. Chicago, supra.* The Supreme Court stated in *United States v. Dickinson*, 331 U.S. 745, 748, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947),

> The Fifth Amendment expresses a principle of fairness and not a technical rule of

procedure enshrining old or new niceties regarding "causes of action"—when they are born, whether they proliferate, and when they die.

Whatever may be the ultimate determination by the Supreme Court with respect to the existence of direct causes of action under the 14th Amendment to recover damages for torts of a more personal nature, we conclude that a direct cause of action does exist against municipalities to recover damages resulting from a taking of private property for public use without just compensation.

The district court concluded that the three-year limitation of M.C.L.A. 600.-5805(7) applies to all the plaintiffs' claims. 415 F.Supp. at 561. This court's opinion in *Marlowe v. Fisher Body*, 489 F.2d 1057 (1973), supports this conclusion, at least insofar as the claims under 42 U.S.C. §§ 1983 and 1985 are concerned. The plaintiffs argue forcefully that the six-year limitation of M.C.L.A. 600.5813 which covers "all other personal actions" should apply. They rely primarily on the holding of the Michigan Court of Appeals in *George v. Petosky*, 55 Mich.App. 433, 437, 223 N.W.2d 6 (1974), that where plaintiffs seek damages for loss of financial expectations and economic benefits which they have a right to expect from ownership of property the six-year statute applies.

■ It is our conclusion that, regardless of which statute applies, limitations did not begin to run on plaintiffs' cause of action until the Supreme Court of Michigan decided that the ordinance was invalid, and that the defendants engaged in a continuing course of action which made it impossible for the plaintiffs to enjoy the full use of their property until that time. The district court's holding that it was not a "continuing wrong" for the city to appeal to the Michigan Supreme Court and keep its stop order in force after the Michigan Court of Appeals had declared the ordinance invalid places too much emphasis on the word "wrong." The "wrong" is the taking of the plaintiffs' property, not the method by which it is taken. The wrong may be perpetuated by otherwise legal actions, such as appealing the court decision in this case.

Nor are we able to agree with the district court's determination that this record conclusively shows that the stop order was validly retained for reasons unrelated to the 200-foot setback requirement. The condition that a six-foot brick wall be constructed was part of the revised site plan as approved by the defendant planning commission. However, it is clear from examination of the state court records, which are part of the record on appeal, that the basis of the injunction and court order to demolish two buildings was the setback requirement, not the other requirements of the approved site plan. The affidavit and exhibits filed by the defendants at most created an issue of fact. The statement that the stop order was issued for failure to construct a brick wall and was totally unrelated to the dispute over the setback ordinance strikes us as somewhat disingenuous. In the October 22, 1969 opinion of the Macomb Circuit Court, filed as an exhibit with the answer of the defendants in this action, the court stated that the defendant Schmeiser, director of the planning commission, testified that "a stop order has been placed on construction of the four front buildings *because all four buildings were being constructed within the proposed right-of-way.*" (emphasis added). This testimony was taken within one month after the stop order was issued. The affidavit which contended construction was stopped solely for failure to comply with other requirements was filed November 7, 1975, more than six years later.

In *Foster v. City of Detroit, supra,* we held that there was a continuing tolling of the statute of limitations as long as the city's moribund condemnation action was pending. In *United States v. Dickinson, supra,* the Court held that limitations did not begin to run against a property owner whose land was taken by flooding without condemnation proceedings until the "fact of taking could no longer be in controversy." 331 U.S. at 748, 67 S.Ct. at 1384. This principle applies to the present case. Until the Michigan Supreme Court issued its decision the question whether the city had in fact taken the plaintiffs' property for public use remained in controversy. Until that time the defendants continuously maintained that the setback ordinance was a valid exercise of the city's police power and that no compensation was due the plaintiffs. Only twenty-one months elapsed between the decision of the Michigan Supreme Court and the filing of the complaint in this case. The action was not barred by limitations.

It was error to grant summary judgment. The claims against individual defendants under 42 U.S.C. § 1983 and § 1985 may be subject to dismissal by summary judgment upon further development of the defense of qualified immunity. See *Hanna v. Drobnick, supra.* Also, since preparation and circulation of this decision the Supreme Court has overruled *Monroe v. Pape, supra.* See *Monell v. Department of Social Services of City of New York,* —— U.S. ——, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The district court should re-examine the § 1983 claims against the city in light of this holding. Meanwhile, we hold that the plaintiffs have stated a claim against the city and its planning commission under the 14th Amendment.

The judgment of the district court is reversed. The cause is remanded to that court for further proceedings.